Filed 12/17/20

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DEPARTMENT OF HUMAN RESOURCES et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> INTERNATIONAL UNION OF OPERATING ENGINEERS, <br><br> Defendant and Respondent. | F078825 <br><br> (Super. Ct. No. BCV-17-102795) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Linda S. Etienne, Temporary Judge.

Frolan R. Aguiling, Linda A. Mayhew, Sandra L. Lusich and Chris E. Thomas for Plaintiffs and Appellants.

The Myers Law Group, Adam N. Stern and D. Smith for Defendant and Respondent.

-ooOoo-

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part V. of the Discussion.

The State of California, through the California Department of Human Resources (the State), entered into a "Memorandum of Understanding" (MOU) with the International Union of Operating Engineers (the Union) regarding terms and conditions of employment for certain state employees classified as bargaining unit 12. The MOU, under article 16.7(G), provided that "materials of a negative nature" placed in an employee's personnel file shall, at the request of the employee, "be purged … after one year." An exception to this provision stated that it did not apply to "formal adverse actions" as defined in the Government Code[1] or to "material of a negative nature for which actions have occurred during the intervening one year period." In the present dispute, an employee (B.H.) in bargaining unit 12 requested that negative material retained in his personnel file for more than one year be purged. A number of months later, the state agency where B.H. is employed, the California Department of Water Resources (DWR), took formal disciplinary action against B.H. referred to as a Notice of Adverse Action (NOAA). The discipline imposed in the NOAA consisted of a one-year salary reduction. The NOAA was based on, and attached copies of, counseling and corrective memoranda of a negative nature from several years past relating to B.H.'s job performance history at DWR. A settlement was later reached which reduced the discipline imposed under the NOAA.[2]

However, the settlement with B.H. did not end the controversy. The Union filed a grievance claiming that DWR violated article 16.7(G) of the MOU by using purged documents to support the adverse disciplinary action taken against B.H. The grievance was ultimately submitted to an arbitrator for resolution, and the arbitrator agreed with the Union's position holding, based on the language of article 16.7(G), that documents

---

[1]     Government Code section 19570 defines an "adverse action" as a "dismissal, demotion, suspension, or other disciplinary action."

[2]     The outcome of that employee disciplinary matter is not at issue herein, and B.H. is not a party to the present appeal.

coming under the operation of the file-purge provision should not have been used to support the adverse action specified in the NOAA. As a remedy, the arbitrator directed the State to cease and desist from further violation of article 16.7(G) of the MOU. In response to the arbitrator's award, the State and DWR (together the State) filed a petition in the trial court under Code of Civil Procedure section 1285 to vacate or correct the award on several grounds (the petition), including that the arbitrator's interpretation of article 16.7(G) of the MOU constitutes a violation of public policy relating to civil service employment. The trial court found the State's arguments unpersuasive; the petition was denied, and the decision of the arbitrator was confirmed.

The State now appeals from the trial court's order denying its petition to vacate or correct the award. We agree with the State's contention that the arbitrator's interpretation of the MOU is contrary to public policy—specifically, the public policy embodied in the constitutional merit principle applicable to all civil service employment. Accordingly, we reverse the trial court's order on the petition and the ensuing judgment, and we remand the matter to the trial court with instructions to enter a new order vacating the award.[3]

## FACTS AND PROCEDURAL HISTORY

*Article 16.7 of the MOU*

The MOU contains provisions relating to personnel and evaluation materials contained in employees' personnel files. Although the specific provision interpreted by the arbitrator in this case is article 16.7(G), which we have underscored below, the entirety of article 16.7 is helpful for purposes of context. Article 16.7 of the MOU states as follows:

---

[3] An arbitrator's decision is often referred to as an "award," even where no monetary award is made. As used herein, the arbitration decision and award are synonymous terms. For convenience, we sometimes refer simply to the "award."

## "16.7  Personnel and Evaluation Materials

"There will only be one official personnel file and normally one supervisory working file regarding each employee and these files will be maintained as follows:

"A.  An employee's official departmental personnel file shall be maintained at a location identified by each department head or designee.

"B.  Information in an employee's official departmental personnel file shall be confidential and available for inspection only to the employee's department head or designee in connection with the proper administration of the department's affairs and the supervision of the employee; except, however, that information in an employee's official departmental personnel file may be released pursuant to court order or subpoena.  An affected employee will be notified of the existence of such a court order or subpoena.

"C.  Evaluation material or material relating to an employee's conduct, attitude, or service shall not be included in his/her official personnel file without being signed and dated by the author of such material.  Before the material is placed in the employee's file, the department head or designee, where possible, shall provide the affected employee an opportunity to review the material, and sign and date it.  A copy of evaluation material relating to an employee's conduct shall be given to the employee.

"D.  An employee and/or his/her authorized representative may review his/her official personnel file and/or supervisory working file during regular office hours.  Where the official personnel file is in a location remote from the employee's work location, reasonable arrangements will be made to accommodate the employee.

"E.  The employee with or without the assistance of their authorized representative, shall have a right to insert in his/her file reasonable supplementary material and a written response to any items in the file.  Such response shall remain attached to the material it supplements for as long as the material remains in the file.

4.

"F.    Any performance evaluation conducted of an employee who is a participant in IUOE/State collective bargaining negotiations shall recognize the employee's frequent absence from his/her State job and the impact of such absences on the employee's performance.  This is not intended to abrogate the right of the State to take disciplinary action against any employee who happens to be involved in such collective bargaining.

"G.    Materials relating to an employee's performance included in the employee's official departmental personnel file shall be retained for a period of time specified by each department, except that at the request of the employee, materials of a negative nature shall be purged from any and all files after one year.

This provision, however, does not apply to formal adverse actions as defined in applicable Government Code sections or to material of a negative nature for which actions have occurred during the intervening one year period.  Except that, by mutual agreement between a department head or designee and an employee, adverse action material may be removed."

*B.H. Exercises File-Purge Rights*

B.H. reviewed his personnel file at DWR and requested that materials of a negative nature be purged from his files.  According to the arbitrator's findings, B.H. did this in 2014 and again in August 2015.

*DWR's Notice of Adverse Action*

In a written NOAA dated March 17, 2016, DWR informed B.H. that adverse action in the form of employee discipline would be imposed—specifically, a salary reduction of 10 percent for a period of one year.  The NOAA stated that the causes of the disciplinary action included, among other things, inefficiency, inexcusable neglect of duty, insubordination, dishonesty, discourteous treatment of the public or other employees, and willful disobedience.  A lengthy statement of facts supporting the disciplinary action included acts or omissions of B.H. occurring between 2013 and the end of 2015.  For purposes of supporting the adverse action and demonstrating that B.H.

received progressive discipline, numerous counseling and corrective memoranda and other documents containing negative material were referenced and copies were attached to the NOAA. The issuance dates of the negative memoranda and documents ranged from 2007 to 2015.

### *B.H. Appeals Adverse Action, Then Settles*

On March 28, 2016, B.H. appealed the disciplinary action to the State Personnel Board (SPB or the Board), which is the constitutional agency charged with enforcing the civil service statutes and reviewing disciplinary actions on appeal. (See Cal. Const., art. VII, § 3, subd. (a).) Thereafter, DWR and B.H. reached an agreement to settle the disciplinary action. In June 2016, the Board approved the parties' settlement agreement. In the settlement agreement, B.H. agreed to accept the disciplinary action, but with a lesser penalty of a 10 percent salary reduction for six months, and he also waived his right to challenge his disciplinary action in any other proceeding.

### *The Union Files a Grievance as Bargaining Representative*

On April 1, 2016, the Union filed a grievance alleging that DWR violated article 16.7(G) of the MOU by relying on prior corrective and counseling memoranda to support the NOAA issued to B.H. since the memoranda on file more than one year should have been purged. The parties were unable to resolve the dispute, and the Union demanded arbitration as provided under the MOU.

### *Arbitration Hearing*

On May 23, 2017, the arbitration commenced between the Union and the State, the two contracting parties to the MOU, being conducted at the DWR facility in Mettler, California, before Arbitrator R. Douglas Collins. At the outset of the hearing, the parties stipulated the arbitrator would decide the following limited issues: "Did the employer violate Section 16.7 of the 2015–2020 bargaining unit MOU by using purged documents to support adverse action specified in a notice of adverse action against [B.H.]? If so, what is the appropriate remedy?" The arbitrator recognized the employer to be the State.

6.

At the hearing, the State made several arguments that article 16.7(G) of the MOU was not violated, including: (i) the situation came within the exception clause of article 16.7(G); (ii) the only files covered by article 16.7 are personnel and supervisory files, not files necessary for *other* purposes such as making a record of progressive discipline or other legal issues (e.g., discrimination claims); (iii) the interpretation urged by the Union would prevent the State from being able to follow the progressive discipline model required by the civil service system and would violate public policy.

The Union made several arguments in favor of its position that the State (through DWR) violated the file-purge provision, including the following: (i) the language of article 16.7(G) is clear that it applies to "any and all files" and not merely to certain kinds of files; (ii) any other interpretation would make the promise illusory because the State could simply retrieve the purged negative memoranda from another file to use them against the employee; (iii) "purged" means it is to be completely removed and gone, not simply placed in another file to be used against the employee at a later time.

At the arbitration hearing, B.H. and certain DWR employees testified. Other evidence presented to the arbitrator included the MOU, excerpts from past MOU's, the NOAA with the exhibits attached thereto, the settlement agreement between B.H. and DWR, and the Union's grievance. After the arbitration hearing was completed, the parties filed posthearing briefing in support of their respective positions. The parties' posthearing briefs emphasized the same points each had argued at the hearing.

*Arbitration Decision*

The arbitrator's decision was issued on August 18, 2017. The arbitrator found in favor of the Union, concluding that the State violated article 16.7(G) of the MOU by using purged documents to support adverse action specified in the NOAA against B.H. The arbitrator so concluded based on what it held was the clear language of the MOU requiring that documents containing negative material must be "purged" after one year at the employee's request from "any and all files" maintained by the State, not merely the

7.

so-called working personnel file in the department to which the employee is assigned. Given the clarity of the contractual provision, the arbitrator found the State's reliance on principles of civil service or progressive discipline to be irrelevant: "It is not uncommon that parties to collective bargaining agreements agree therein that discipline may not be considered if it is beyond a specified age, typically one to three years …." As a remedy, the State was ordered to "cease and desist" from violating article 16.7(G) of the MOU "by failing or refusing to purge materials of a negative nature that are more than a year old from any and all files maintained by the Employer upon request of the employee; provided, however, that this requirement does not apply to formal adverse actions as defined in applicable provisions of the California Government Code, specifically Government Code [section] 19570 et seq."

*The State's Petition to Vacate or Correct Arbitration Award*

On December 5, 2017, the State filed its petition to vacate or correct the arbitration award (the petition). In the petition, the State argued the award should be vacated by the trial court because the interpretation given by the arbitrator to article 16.7(G) of the MOU allegedly violates public policy by undermining state departments' ability, as civil service employers, to comply with the constitutional merit principle, including by impeding their ability to take appropriate disciplinary action based on progressive discipline. Additionally, the State argued the arbitrator's interpretation of article 16.7 will interfere with the Board's constitutional duty to review disciplinary action. Finally, the State argued in the petition that the arbitrator's remedy exceeded the scope of his authority by issuing a statewide cease and desist order.

*Supporting Declarations*

In further support for the petition, the State presented two declarations to the trial court that were not introduced in the arbitration proceedings. One was the declaration of Alvin Gittisriboongul, as chief counsel for the Board. In his declaration, Gittisriboongul notes the importance of progressive discipline under civil service principles as applied by

8.

the Board in reviewing disciplinary actions. Gittisriboongul then states: "However, if a state department has purged its progressive discipline documentation from existence, a state department will not be able to include such matters with its notice of adverse action, as required by SPB regulations and precedent. This will make it less likely that the SPB will be able to appropriately consider the progressive disciplinary measures the State employer may have taken." Additionally, Gittisriboongul's declaration observed the Board "has previously ruled that it may consider prior personnel actions even after they have been removed from the employee's official personnel file. (See, e.g., *In the Matter of the Appeal of J.H.* (2003) SPB No. 03-05 and *Jack Tolchin* (1996) SPB Dec. No. 96-04.)"

The second declaration presented in support of the petition was the declaration of Jennifer Dong Kawate, the chief of the human resources office of DWR. According to Kawate's declaration, DWR employs approximately 3,400 individuals, including approximately 633 individuals who belong to bargaining unit 12. She explains DWR is required to follow the Board's policy of applying progressive discipline in any disciplinary actions it takes against its employees, and DWR employees have the right to appeal disciplinary actions they receive to the Board. Kawate expresses the following concerns in her declaration about the effect of the arbitration decision rendered in this case: "If this Arbitration Award is allowed to stand, it will detrimentally impact the ability of DWR to initiate and be successful with meritorious disciplinary actions. For instance, if DWR cannot present appropriate evidence of progressive discipline to the SPB, this will severely weaken DWR's ability to demonstrate that a disciplined employee has received prior notice of wrongdoing and an opportunity to improve their performance or change their conduct. This could potentially result in the SPB overturning a disciplinary action in its entirety, or rendering a lesser penalty than the employee would otherwise receive had DWR been able to inform the SPB of the progressive disciplinary measures it had, in fact, taken. [¶] … Similarly, DWR is required by SPB regulations to

9.

provide a disciplined employee with a copy of all materials upon which an action is based. If DWR is required to purge its progressive discipline documentation from existence, it will not be able to satisfy these regulations. This would further jeopardize the ability of DWR to have its disciplinary action upheld by the SPB."

Kawate's declaration stated that the arbitration decision, if allowed to stand, would result in further negative impacts: "The problems with the Arbitration Award potentially extend beyond the disciplinary context. DWR maintains an array of records that could contain progressive discipline materials. Such records may include internal investigation files, legal files, equal employment opportunity (EEO) files, and workers' compensation files. If DWR is required to delete its counseling and corrective memoranda from every single file within its possession, it will impede DWR's ability to perform many basic management functions that depend on the existence of such records. For example, if DWR needed to conduct an EEO investigation as to whether an employee received a counseling memo as an act of retaliation or discrimination, the Arbitration Award may require DWR to destroy this key evidence. In certain workers' compensation claims, whether an employee received a counseling or corrective memo may be relevant to benefit entitlement."

The Union filed opposition to the petition. The Union objected to the introduction of the two declarations that were not presented in the arbitration proceedings, and it urged the trial court to confirm the award since it was based on the clear terms of the bargain reached by the parties. The Union also made various arguments that the trial court should not consider the public policy arguments due to alleged failure by the State to exhaust other remedies and/or failure to bargain.

In its reply in support of the petition, the State reasserted its grounds for granting the petition (i.e., violation of public policy) and argued that the Union's attempts to avoid the public policy issue were misplaced. The state also asserted, with citation to precedent, that the evidentiary objection to the declarations was without merit. (See, e.g,

10.

*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 39–40 [on petition to vacate arbitration award, the trial court should take into account " 'all of the admissible evidence submitted to it regardless of whether that evidence was before the arbitrator' "].)

*The Trial Court's Order Denying the Petition*

The hearing on the petition was commenced on August 30, 2018, continued to September 28, 2018, and after the parties' arguments were concluded, the trial court took the matter under submission. The trial court held that the arbitrator correctly interpreted the plain language of the MOU, and such interpretation did not violate public policy. The trial court further held the arbitration award did not go beyond the arbitrator's authority because the State was one of the parties to the MOU, not simply DWR. On February 26, 2019, the trial court entered its written order and judgment on the petition. The judgment was amended on May 8, 2019, to include an award of costs of suit.

On February 14, 2019, the State filed a premature notice of appeal from the denial of its petition to vacate or correct arbitration award. We elected to treat the premature notice of appeal as from the subsequently entered judgment.

## DISCUSSION

I.     STANDARD OF REVIEW

"The scope of judicial review of arbitration awards is extremely narrow. Courts may not review the merits of the controversy, the sufficiency of the evidence supporting that award, or the validity of the arbitrator's reasoning." (*Department of Personnel Administration v. California Correctional Peace Officers Assn.* (2007) 152 Cal.App.4th 1193, 1200.) With limited exceptions, "an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6.)

By statute, however, a trial court "*shall* vacate" an arbitration award if the "arbitrators exceeded their powers and the award cannot be corrected without affecting

11.

the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (a)(4), italics added.) An arbitrator exceeds his or her powers by issuing an award that violates a well-defined public policy. (*California Dept. of Human Resources v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 1420, 1430; *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443.) "[C]ourts may, indeed must, vacate an arbitrator's award when it violates a party's statutory rights or otherwise violates a well-defined public policy." (*Department of Personnel Administration v. California Correctional Peace Officers Assn.*, *supra*, 152 Cal.App.4th at p. 1200.) In determining whether an arbitration award contravenes public policy, we review the trial court's decision de novo. (*Ling v. P.F. Chang's China Bistro, Inc*. (2016) 245 Cal.App.4th 1242, 1252.)

II.    THE SUBJECT PUBLIC POLICY REGARDING CIVIL SERVICE
       EMPLOYMENT – THE MERIT PRINCIPLE

An arbitration award in a dispute between the State and an employee organization will be vacated if the arbitrator's interpretation of the subject MOU violates public policy. (See, e.g., *California Statewide Law Enforcement Assn. v. Department of Personnel Administration* (2011) 192 Cal.App.4th 1, 15–16 [where the arbitrator's award mandated that certain provisions of the agreement be enforced retroactively without necessary legislative approval, it violated public policy].) Here, the State's primary argument on appeal is that the trial court erred in failing to vacate the arbitration award because the arbitrator's construction of article 16.7 of the MOU violates public policy regarding fundamental civil service law—specifically, the merit principle. We agree, as more fully explained in the discussion below. We begin our consideration of this issue by summarizing the nature of the public policy being asserted by the State.

As noted, the public policy under consideration is known as the *merit principle* of civil service employment. It is founded on and enshrined in the California Constitution, which mandates as follows: "In the civil service permanent appointment and promotion

12.

shall be made under a general system based on merit ascertained by competitive examination." (Cal. Const., art. VII, § 1, subd. (b).) This constitutional provision was adopted by California voters in 1934 to eliminate the spoils system and political patronage in civil service appointments and promotions. (*California Attorneys, etc. v. Schwarzenegger* (2009) 174 Cal.App.4th 424, 433; *California State Personnel Bd. v. California State Employees Assn., Local 1000, SEIU, AFL-CIO* (2005) 36 Cal.4th 758, 764–765 (*California State Personnel Bd. v. CSEA*) [noting further the nonpartisan SPB was also established by constitutional provision adopted in 1934].) Under this merit principle, public employees are to be recruited, selected, and advanced under conditions of political neutrality, equal opportunity, and competition on the basis of merit and competence. (*State Personnel Bd. v. Department of Personnel Admin*. (2005) 37 Cal.4th 512, 526.) The Board is the constitutional agency charged with administering the merit principle through its oversight of civil service laws and review of disciplinary actions. (*California Correctional Peace Officers Assn. v. Department of Corrections & Rehabilitation* (2017) 15 Cal.App.5th 97, 105; *Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 184.) Because the merit principle is considered inviolate (see *California State Personnel Bd. v. CSEA*, *supra*, 36 Cal.4th 758, 765), it is well established that "neither a statue nor an MOU may contravene it." (*California Correctional Peace Officers Assn. v. Department of Corrections & Rehabilitation*, *supra*, 15 Cal.App.5th at p. 106.)

The Supreme Court has consistently held that MOU's, even when approved by the Legislature, may not contravene the merit principle. For example, in *California State Personnel Bd. v. CSEA*, *supra*, 36 Cal.4th 758, the Legislature approved three MOU's that provided for "post and bid" pilot programs for certain bargaining units. These programs required that the appointment and promotion of employees eligible for post and bid positions would be based on seniority. (*Id*. at p. 763.) The Board filed a petition for a writ of mandate seeking to enjoin the implementation of the program on the ground that

13.

it violated the constitutional merit principle. The trial court agreed, but the Court of Appeal reversed and review was granted by the Supreme Court. The Supreme Court held the post and bid programs violated the fundamental mandate of the merit principle. (*Id.* at pp. 763–764, 775–776.) The court explained as follows: "[W]hile consideration of seniority may be appropriate as part of a general merit-based system of appointments and promotions, depriving appointing powers of the ability to interview eligible candidates and base their hiring decisions on a broader range of criteria bearing on fitness and efficiency 'inevitably pose[s] a present total and fatal conflict' [citation] with the constitutional command that 'appointments and promotions in state service be made solely on the basis of merit' [citation]." (*Id.* at p. 772.) "By dictating an absolute seniority preference in hiring, and foreclosing appointing powers from interviewing eligible candidates and considering a broader and more meaningful range of merit-based criteria as appropriate to determine the candidate most qualified for a posted position, the programs undermine the constitutional mandate that appointments and promotions be based on merit." (*Id.* at p. 773.)

In reaching this conclusion, the Supreme Court rejected the argument that the Legislature's approval of the three MOU's was a permissible limitation on the discretion of hiring agencies: "In adopting the constitutional merit principle, California voters made clear their intent that permanent civil service appointments and promotions be made solely on the basis of merit. No matter what discretion the Legislature has purported to give or withdraw from appointing powers, it does not have a free hand to approve MOU's or enact statutes that flout this mandate." (*California State Personnel Bd. v. CSEA*, *supra*, 36 Cal.4th at p. 774.) For these reasons, the judgment of the Court of Appeal upholding the MOU's was reversed. (*Id.* at pp. 775–776.)

In *State Personnel Bd. v. Department of Personnel Admin.*, *supra*, 37 Cal.4th 512, the Board challenged four MOU's that allowed employees the option of bypassing the Board for review of any disciplinary action by requesting an alternative review forum

created by the MOU. (*Id*. at p. 516.) The Supreme Court held the bypass provision violated the constitutional mandate that the Board shall review disciplinary actions taken against civil service employees. (*Ibid*.) In so ruling, the Supreme Court emphasized that the Board's adjudicatory authority to review disciplinary actions "is a 'necessary counterpart' " to its power to administer the merit principle. (*Id*. at p. 526.) The Supreme Court explained: "[W]hen a state civil service employee is *removed* from employment, the interest of the [SPB] in ensuring that the disciplinary action does not violate the merit principle is just as great as when an employee is *selected* for state civil service employment. And discipline other than removal from civil service also implicates the merit principle because disciplinary actions in general can have a profound effect on an employee's chance of future advancement within the merit-based civil service. [¶] It would be inimical to California's constitutionally mandated merit-based system of civil service, which is administered by the [SPB], to wholly divest that board of authority to review employee disciplinary actions in favor of an MOU-created review board. This is so because a state civil service based on the merit principle can be achieved only by developing and consistently applying uniform standards for employee hiring, promotion, and discipline.… Because employee discipline is an integral part of the civil service system, the [SPB's] *exclusive* authority to review disciplinary decisions is a critical component of the civil service system." (*Id*. at pp. 526–527.)

As the above authority makes clear, the merit principle is implicated not only in decisions to hire or promote state employees, but also in decisions to impose discipline. (*State Personnel Bd. v. Department of Personnel Admin*., *supra*, 37 Cal.4th at p. 526.) Further, "a state civil service based on the merit principle can be achieved" by the Board "only by developing and consistently applying uniform standards for employee hiring, promotion, and discipline." (*Id*. at pp. 526–527.) One of the uniform standards applied by the Board by means of precedential decision in the review of disciplinary actions is that of progressive discipline. (See Gov. Code, § 19582.5 [board may issue precedential,

15.

published decisions in its review of disciplinary actions].) In the case of *In the Matter of the Appeal by R.N.* (1992) SPB Decision No. 92-07, at pp. 6–7, the Board declared as follows: "Historically, the SPB has followed the principles of progressive discipline in exercising its constitutional authority to review disciplinary actions under the State Civil Service Act. The principles of progressive discipline require that an employer, seeking to discipline an employee for poor work performance, follow a sequence of warnings or lesser disciplinary actions before imposing the ultimate penalty of dismissal. The obvious purpose of progressive discipline is to provide the employee with an opportunity to learn from prior mistakes and to take steps to improve his or her performance on the job. Thus, corrective and/or disciplinary action should be taken by a department on a timely basis: performance problems should not be allowed to accumulate before progressive discipline is initiated."[4] (*In the Matter of the Appeal by R.N.*, *supra*, SPB Dec. No. 92-07, at pp. 6–7, fn. omitted.) (See also *In the Matter of the Appeal by Bazemore* (1996) SPB Dec. No. 96-02 (*Bazemore*) [numerous past counseling memos properly used to support adverse action and to establish the employee did not take counseling to heart]; *In the Matter of the Appeal by J.H.*, *supra*, SPB Dec. No. 03-05, at p. 12 [narrow construction of statute rejected which would have limited the types of disciplinary matters that may be considered, since such a narrow construction would hamper the board's ability to apply the principles of progressive discipline].)

III.    THE ARBITRATOR'S DECISION VIOLATED THE MERIT PRINCIPLE

In this case, the arbitration award construed article 16.7(G) of the MOU to mean that once an employee in bargaining unit 12 has exercised his or her file-purge rights

---

[4]    As set forth in a footnote to this summary of progressive discipline, the Board also pointed out that "[w]hile the principles of progressive discipline are well-suited to treating problems of poor work performance, … serious willful misconduct on the part of an employee may well warrant dismissal in the first instance." (*In the Matter of the Appeal by R.N.*, *supra*, SPB Dec. No. 92-07, at p. 6, fn. 3.)

16.

under that provision, any and all documents containing negative material on file for more than one year must be purged and cannot be used or recited as support for any adverse action or NOAA against said employee. The arbitrator explained his decision: "The controlling language [of the] first paragraph of § 16.7(G) … plainly states that 'materials of a negative nature *shall be purged from any and all files* after one year' [emphasis added]. That sentence contains two absolutes, 'shall' and 'all,' that are simply not susceptible of any alternate meaning. By the use of the word 'shall,' the parties have agreed that management has no discretion but to remove 'materials relating to an employee's performance' that are 'of a negative nature' upon request by the employee after one year. By their use of the term 'any and all files,' the parties made it crystal clear that such documents must be purged from every file maintained by the Employer, not merely the so-called 'working personnel file' in the Department or office to which the employee is assigned."

In applying this construction, the arbitrator found that the State had violated article 16.7 by supporting its March 17, 2016 NOAA against B.H. with prior counseling and corrective memoranda on file more than one year prior to the date of the NOAA, including corrective memoranda dated March 11, 2015, November 3, 2014, and August 1, 2013, and counseling memoranda dated June 21, 2013, and June 15, 2010. The arbitrator acknowledged the exception clause in the second paragraph of article 16.7(G), but apparently concluded it was inapplicable because "there [was] no evidence that … adverse action" was taken against B.H. regarding any of the more than one year old negative materials.[5]

---

[5]      As noted previously, the exception clause states: "This provision … does not apply to formal adverse actions as defined in applicable Government Code sections or to material of a negative nature for which actions have occurred during the intervening one year period. Except that, by mutual agreement between a department head or designee and an employee, adverse action material may be removed."

According to the State's appeal, the arbitrator's construction of the MOU, even if arguably correct as a matter of contractual interpretation, conflicts with the fundamental principle of civil service law known as the merit principle, because it impedes the ability of state departments to make reasonable and sound employment decisions based on merit. As argued by the State: "The Award requires a department to destroy all copies of its counseling and corrective memoranda upon request of the employee, if a formal adverse action does not follow within one year. The Award thereby prevents state departments from considering these materials (because they have been destroyed) when making important employment decisions on appointment, promotional, and disciplinary matters. This interpretation violates the merit principle because it requires the state departments to expunge key documents, such as corrective memoranda, which are crucial to the fair and accurate evaluation of an employee's performance."

We agree that if article 16.7 were enforced as construed by the arbitrator, the resulting inability of state departments[6] (with employees in bargaining unit 12) to retain, consider or rely on the subject employees' counseling and corrective memoranda containing negative material on file more than one year, once a file-purge request is made, would impermissibly undermine the merit principle. As the present case clearly demonstrates, such records serve to memorialize matters relevant to an employee's ongoing work performance and provide warnings of areas needing improvement. Obviously, such counseling and corrective memoranda, while not amounting to formal adverse actions, may have a material bearing on subsequent disciplinary decisions. It follows that the wholesale purging of such relevant records and information from all files after the elapse of only one year at the employee's request, which would thereby prevent any subsequent use or consideration thereof by the state employer to support a disciplinary action, will substantially undermine that state employer's ability to (i) make

---

[6]     Also referred to as state employers.

18.

a fair and fact-based evaluation of the employee's performance, and (ii) decide on disciplinary action based on merit.  The same effect would logically undermine the Board's ability to fairly review such matters based on merit.  For these reasons, we conclude that the arbitrator's interpretation and enforcement of article 16.7 of the MOU conflicts with the constitutional merit principle and therefore violates fundamental public policy applicable to civil service employment.  (See *California State Personnel Bd. v. CSEA*, *supra*, 36 Cal.4th 758, 773 [MOU provisions may not contain programs that "undermine" the merit principle].)

Closely related to the negative impact of the arbitrator's award on the ability of state departments, as employers, to comply with the merit principle, the construction given to article 16.7(G) of the MOU would *also* interfere with the ability of said state departments to effectively carry out progressive discipline.  As noted above, the Board, in administering the merit principle by the development and application of uniform standards for employee hiring, promotion, and discipline, has required that state departments utilize progressive discipline.  In the case of *In the Matter of the Appeal by R.N.*, *supra*, SPB Decision No. 92-07, the Board declared adherence to the principles of progressive discipline, and it further stated that progressive discipline requires that an employer, seeking to discipline an employee for poor work performance, follow a sequence of warnings or lesser disciplinary measures before imposing a more severe disciplinary action.  (*Id*. at p. 6.)

Regarding the detrimental effect of the arbitration award on progressive discipline, the State asserts as follows:  "The Arbitrator's interpretation of [a]rticle 16.7 improperly prevents a department from following this progressive discipline model required by the SPB.  A department cannot make a proper record of the warnings it has issued in the form of counseling and corrective memoranda if it is required to purge these documents from existence.  A department will similarly be unable to present its progressive discipline evidence to the SPB if a department is required to destroy such evidence prior to hearing.

19.

This Award violates public policy by requiring state departments to eradicate its records of progressive discipline, and by preventing departments from sharing such evidence with the SPB. The Award will inevitably harm the civil service system by hampering the ability of state departments to bring appropriate disciplinary actions."

The present case demonstrates the validity of the State's concerns regarding the impact of the arbitrator's decision on progressive discipline. The DWR had extensively documented by means of counseling and corrective memoranda a long series of problematic behavior exhibited by B.H.; however, under the arbitrator's decision, such evidence had to be removed from all files—since it was more than one year old—and could not be used or relied on to support the disciplinary action itself or to verify that progressive discipline was followed. Furthermore, in the event B.H. exhibited similar work deficiencies in the future warranting disciplinary action, DWR would have no adequate record from which to show it followed progressive discipline as required. If the matter were eventually reviewed by the Board, it is reasonable to assume the Board would likewise be hampered by the absence of such relevant evidence in attempting to confirm whether progressive discipline had been followed.

We conclude the arbitrator's decision interpreting and enforcing article 16.7(G) interferes with state employers' ability to administer and prove progressive discipline. We have already concluded that the arbitrator's decision violates the public policy enshrined in the constitutional merit principle. Does the fact that the arbitrator's decision *also* impedes progressive discipline lend *further* support to our conclusion? No adequate argument is made that progressive discipline is itself a fundamental public policy, nor do we equate progressive discipline with the merit principle. Nevertheless, the two concepts do overlap at a more practical level—that is, the same loss of relevant evidence in the event that personnel files are purged after one year would affect *both* the ability to carry out discipline based on merit *and* the ability to comply with progressive discipline. As accurately pointed out by the State, the progressive discipline steps taken by a state

20.

employer often constitutes relevant information that the Board relies upon in determining whether, and to what extent, to uphold a particular disciplinary action. (*In the Matter of the Appeal by R.N.*, *supra*, SPB Dec. No. 92-07, at pp. 6–9.) Thus, progressive discipline may in many cases have a direct bearing on the appropriate level of discipline imposed or upheld. (*Ibid.*) Because of this correlation, we hold that the award's negative effect on the ability of state employers to engage in or prove progressive discipline—although not shown to establish a public policy violation by itself—provides further corroboration to our ultimate conclusion that the public policy of the merit principle has been violated in this case.

For all of the foregoing reasons, we conclude the arbitration award in this case violated the fundamental merit principle in the construction given to article 16.7(G) of the MOU, and consequently, the trial court should have vacated the arbitration award on the ground that it violated public policy.

A. Statute of Limitations

The State raises an additional argument in support of its claim that the arbitration decision violated public policy. This additional argument is premised on the fact that the Legislature has provided a three-year statute of limitations to serve a notice of disciplinary action on an employee after the occurrence of the cause for discipline. (Gov. Code, § 19635.)[7] The State argues the arbitrator's interpretation of the MOU provision would effectively eviscerate the three-year statute of limitation under circumstances such as occurred in the present case, because, in practical effect, it would force state employers to decide on whether or not to pursue a disciplinary action within only one year, not three

---

[7]     Along with this legislative provision of a three-year period to pursue adverse disciplinary action, the State points out that in the Board's decision entitled *Bazemore*, *supra*, SPB Decision No. 96-02, at pages 10–12, the Board held that a department may discipline an employee for actions previously documented in a counseling memo, provided the department notifies the employee in the counseling memo that it might do so.

years.[8]  According to the State, "A department would be forced to bring an adverse action within one year, not three years, because the Award requires a department to destroy its evidence of the misconduct (e.g., the counseling memo) after just one year, and also because the Award forbids a department from <u>even citing</u> the counseling memo in a disciplinary action after one year (provided that the employee has asked the department to purge the document)."

Because we have already concluded that the MOU file-purge provision, as interpreted and enforced by the arbitration award, violated public policy, we find it is unnecessary to reach the statute of limitations argument raised by the State—and we decline to do so.  However, in connection with the statute of limitations argument, we note that in several of the MOU's adopted in prior years by the same parties with respect to bargaining unit 12, an employee could only request to have negative materials purged "after *three* years," and the exception clause stated the provision would not apply "to material of a negative nature for which actions have occurred during the intervening *three* year period."  (Italics added.)  It is possible that the file-purge provisions in these former MOU's were designed to seek consistency with the statute of limitations, but in any event these former MOU's clearly provided a much longer period of time within which the state employer could make disciplinary decisions that relied on materials of a negative nature in the employee's personnel file.  We offer no opinion whether a three-year provision, such as was present in the earlier MOU's, would survive the same public policy challenge against which the MOU provision in *this* case—with its one-year provision—did not.

---

**8**    As previously noted, the exception clause of article 16.7 would permit the state employer to use "material of a negative nature for which actions have occurred during the intervening one year period."

22.

IV.     THE TRIAL COURT ERRED IN EXCLUDING DECLARATIONS

In support of its petition in the trial court, the State provided two declarations shedding additional light on the impact of the arbitrator's award.  The trial court sustained objection to the declarations on the sole ground that "the issues before the court are not factual but legal, which makes the consideration of any facts set forth in the declaration unnecessary …."  While conceding the declarations were not essential to resolve the violation of public policy issue before the trial court, the State nonetheless argues that because the declarations provided relevant information, the trial court should not have excluded the declarations.  As explained below, we agree with the State's argument.

Although we described the two declarations in our summary of the background facts, we briefly reiterate the nature of these declarations.  One was the declaration of Alvin Gittisriboongul who, as chief counsel for the Board, observed the importance of progressive discipline under civil service principles as applied by the Board in reviewing disciplinary actions.  Gittisriboongul's declaration then added:  "However, if a state department has purged its progressive discipline documentation from existence, a state department will not be able to include such matters with its notice of adverse action, as required by SPB regulations and precedent.  This will make it less likely that the SPB will be able to appropriately consider the progressive disciplinary measures the State employer may have taken."  The second declaration was that of Jennifer Dong Kawate, the chief of the human resources office of DWR.  Kawate's declaration acknowledged that DWR is required to follow the Board policy of applying progressive discipline in any disciplinary actions it takes against its employees, and DWR employees have the right to appeal disciplinary actions they receive to the Board.  Kawate expressed the following concerns in her declaration about the effect of the arbitration decision rendered in this case:  "If this Arbitration Award is allowed to stand, it will detrimentally impact the ability of DWR to initiate and be successful with meritorious disciplinary actions.  For

23.

instance, if DWR cannot present appropriate evidence of progressive discipline to the SPB, this will severely weaken DWR's ability to demonstrate that a disciplined employee has received prior notice of wrongdoing and an opportunity to improve their performance or change their conduct. This could potentially result in the SPB overturning a disciplinary action in its entirety, or rendering a lesser penalty than the employee would otherwise receive had DWR been able to inform the SPB of the progressive disciplinary measures it had, in fact, taken. [¶] … Similarly, DWR is required by SPB regulations to provide a disciplined employee with a copy of all materials upon which an action is based. If DWR is required to purge its progressive discipline documentation from existence, it will not be able to satisfy these regulations. This would further jeopardize the ability of DWR to have its disciplinary action upheld by the SPB."

We note that the law specifically authorizes a party to file declarations in a petition to vacate or correct an arbitration award. The petition is heard by the trial court "in a summary way in the manner and upon the notice provided by law for the making and hearing of motions." (Code Civ. Proc., § 1290.2.) Our courts have construed this provision to allow the submission of declarations and documentary evidence in connection with the petition. (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1223.) The trial court ordinarily should consider all the admissible evidence submitted, regardless of whether that evidence was before the arbitrator. (*Ahdout v. Hekmatjah*, *supra*, 213 Cal.App.4th 21, 39–40.) Here, both the chief counsel of the Board, and the chief of the human resources office of DWR, would each appear to have sufficient operational knowledge of procedures and policies of the respective agencies to offer the testimony provided in their declarations. Furthermore, the declarations constituted relevant evidence confirming applicable Board policy and highlighting some of the practical or logistical consequences to civil service disciplinary matters that would likely result if the arbitration award stands. We conclude the trial court erred in excluding the declarations.

24.

V.     THE UNION'S ARGUMENTS ARE UNAVAILING TO OVERCOME PUBLIC POLICY VIOLATION*

The Union makes a number of arguments on technical, procedural or defensive grounds to support its position that the petition was properly denied by the trial court. The State responds that the Union's arguments are misplaced and fail to address or rebut the central issue raised in the present appeal that the arbitration award, in its interpretation and enforcement of article 16.7(G), violates public policy because it intrudes upon state employers' ability to take disciplinary action based on the merit principle and restricts their ability to engage in progressive discipline. We conclude that the Union's arguments are unavailing and inadequate to overcome the State's public policy challenge. We address the Union's main arguments below.

A.  The *Larson* Case Does Not Defeat the State's Appeal

The Union argues that the grounds asserted in the petition and argued in the present appeal are invalid based on *Larson v. State Personnel Bd.* (1994) 28 Cal.App.4th 265 (*Larson*). In *Larson*, a state department terminated one of its employees for disciplinary reasons after it was alleged the employee committed a serious offense, and the employee then filed an appeal of his termination to the Board. After the appeal to the Board was filed, the employee and the state department mutually agreed to settlement terms, whereby the employee withdrew his notice of appeal and the state department withdrew its notice of disciplinary action and agreed to reinstate the employee subject to certain conditions. (*Id.* at pp. 268–269, 278.) The Board invalidated the settlement agreement and asserted that, pursuant to Government Code section 18681, the Board was required to approve the terms of any settlement agreement of any employee discipline matter that was appealed to the board. (*Larson*, *supra*, 28 Cal.App.4th at pp. 275–276.) In a petition for writ of mandate, the superior court held that the Board exceeded its jurisdiction in requiring the parties to seek the approval of the Board for the mutual

_____

*       See footnote, *ante*, page 1.

25.

settlement.  (*Id*. at p. 276.)  On appeal, we agreed with the superior court, holding that the statute in question did not require the matter to be submitted to the Board for approval. (*Id*. at pp. 280–281; see also Gov. Code, § 19579.)  We concluded the *Larson* appeal with the following words:  "If … both sides reach an agreement or resolution and wish to withdraw from further proceedings before the Board, as in the instant case, why should they be precluded from doing so?  There is little difference here from a plaintiff and defendant who proceed to a judgment in the trial court, one or both parties proceed with an appeal, but before argument or submission, the plaintiff and defendant agree to settle their dispute and dismiss the appeal.  Why, if the parties have settled their argument, should the courts force them to continue their appeal and waste time, money and judicial resources, unless the parties agree to let the appellate court decide if it agrees with the settlement?  In our view, they should not, as we conclude here."  (*Larson*, *supra*, 28 Cal.App.4th at pp. 280–281.)

The Union argues, by analogy to what we decided in *Larson*, that the parties to the subject MOU, the State and the Union, were free to privately agree to whatever they wanted in the MOU without interference from the Board, and therefore this court should not be concerned about such things as file-purge provisions.  In other words, according to the Union, just as the employee and the state department in *Larson* were free to negotiate a settlement which removed a disciplinary action against an employee, here the State and the Union were free to negotiate a file-purge concerning negative materials.

We reject the Union's attempt to bootstrap the present appeal into the *Larson* context.  The cases are readily distinguishable.  For one thing, *Larson* involved a statute which we interpreted to be permissive, not mandatory, while here we are dealing with a violation of constitutionally enshrined public policy for civil service employees which embodies the merit principle.  Moreover, unlike *Larson*, the present appeal is not about whether the Board has authority to intervene to require approval of terms of a private settlement with an individual employee.  Rather, the broader issue here is whether an

26.

MOU affecting a bargaining unit of state civil service employees and approved by the Legislature may, as interpreted and enforced by the arbitrator's decision, conflict with and undermine the constitutional merit principle applicable to civil service employment. That issue has already been resolved by case law: The law is clear that an MOU may not conflict with or undermine the merit principle. (See, e.g., *California State Personnel Bd. v. CSEA*, *supra*, 36 Cal.4th 758, 773 [MOU provisions may not contain programs that "undermine" the merit principle]; *California Correctional Peace Officers Assn. v. Department of Corrections & Rehabilitation*, *supra*, 15 Cal.App.5th at p. 106 [noting that because the merit principle is considered inviolate, "neither a statue nor an MOU may contravene it"].) For these reasons, we reject the Union's argument that *Larson* defeats the grounds for the State's appeal.

B. Judicial Estoppel is Inapplicable

The Union argues the doctrine of judicial estoppel precludes the State from arguing the award violates public policy. Specifically, the Union contends that the State's position in the present case conflicts with a position it took in separate litigation between the parties. In support of its argument, the Union requests that we grant judicial notice of certain pleadings and orders in the separate litigation. We grant that request for judicial notice to consider the question presented, but we conclude that judicial estoppel is inapplicable.[9]

Judicial estoppel prevents a party from asserting a position in a legal proceeding that is incompatible to a position previously taken in the same or some earlier proceeding. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 (*Jackson*).) The doctrine may be applied when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party

_____

[9] Respondent's request for judicial notice filed on August 26, 2019 is hereby granted. The Clerk/Executive Officer of the court is directed to file the exhibits in support of request received on August 26, 2019.

was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.  (*MW Erectors, Inc. v. Neiderhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422 (*MW Erectors*).)

The doctrine is applied to prevent a party from changing its position over the course of judicial proceedings when such a positional change would have an adverse impact on the judicial process; that is, it prevents a party from abusing the judicial process by first advocating one position, and later, if it becomes beneficial, to assert the opposite.  (*Jackson*, *supra*, 60 Cal.App.4th at p. 181; *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 449; see *The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 841.)  However, "numerous decisions have made clear that judicial estoppel *is an equitable doctrine*, and its application, even where all necessary elements are present, is discretionary."  (*MW Erectors*, *supra*, 36 Cal.4th at p. 422.)  "Moreover, because judicial estoppel is an extraordinary and equitable remedy that can impinge on the truth-seeking function of the court and produce harsh consequences, it must be 'applied with caution and limited to egregious circumstances' [citations]."  (*Minish v. Hanuman Fellowship*, *supra*, 214 Cal.App.4th at p. 449.)

As noted, the Union submitted court records from a separate action between the parties.  The separate litigation was filed in Kings County, case No. 18C0027 (the Kings County case).  The court records submitted from the Kings County case reflect that the State claimed an arbitrator abused his authority by issuing an award which interpreted the MOU to include the terms of a prior settlement agreement between the parties.  Because the prior settlement agreement was not part of the MOU and had not been approved by the Legislature, the State argued in the Kings County case that the arbitrator exceeded his authority and violated public policy because the law required the Legislature to review and approve all MOU terms, addenda and all MOU expenditures before they become

28.

effective, and consequently, the arbitrator had no authority to amend the MOU by incorporating terms from the prior settlement agreement. The trial court ruled in the State's favor on that issue in the Kings County case.

We fail to discern how the position taken by the State in the Kings County case was wholly incompatible with its position in the present appeal. The legal requirement of legislative approval of MOU terms is not at issue here and has not been denied. Nor is the State asking the court to amend the terms of the MOU. Instead, the crux of the issue before us, as argued by the State in the present appeal, is whether the terms of article 16.7(G) of the MOU, as specifically interpreted and enforced by the arbitrator, are in violation of well-defined public policy. No conflicting positions affecting the judicial process are indicated. The Union has failed to demonstrate that judicial estoppel should be applied here, and we decline to do so.

C. The Board's *Bazemore* Decision Does Not Support the Union

The Union argues that the Board holding in the case of *Bazemore*, *supra*, SPB Decision No. 96-02, establishes that it is proper to prohibit a state department's use or consideration of prior counseling memoranda on file as a basis for subsequent disciplinary action. We disagree, because the Union's argument mischaracterizes the Board's decision in that case.

In *Bazemore*, the Board explained that under a prior decision, the Board held that when a prior counseling memorandum actually had imposed disciplinary action against the employee, the employee should not be subject twice to discipline for the same incident. *Bazemore* explained that rule had since been clarified: "In clarifying … , we noted that the Board never intended to preclude departments from taking formal action after merely documenting misconduct or from counselling employees as to the need for improvement." (*Bazemore*, *supra*, SPB Dec. No. 96-02, at p. 10.) In fact, "the Board wants to encourage supervisors and managers to provide guidance and counselling to employees where appropriate, in hopes that the guidance and counselling provided will

29.

effectuate its purpose and obviate any need for adverse action." (*Id*. at p. 11.) Thus, in the absence of clear and unambiguous evidence that a counselling memorandum was disciplinary in nature and effect, the memorandum may be used as a basis for a subsequent disciplinary action: "[A] department is not barred from taking formal adverse action based on incidents cited in a memorandum documenting the prior counselling, as well as upon the incidents that demonstrate that the employee did not take the counselling to heart." (*Id*. at p. 12.) Finally, *Bazemore* pointed out that counselling memoranda may include clarifying language, such as by informing the employee that if he or she continues to engage is such misconduct, formal action will be taken in the future based on the incidents documented in the memoranda.[10] (*Bazemore*, at p. 12.) That is what occurred in *Bazemore*, and the Board concluded there that "the Department is not precluded from relying on the incidents discussed in the numerous Counselling Memoranda as the basis for the instant adverse action." (*Ibid*.)

As the above summary reflects, the *Bazemore* case does not preclude the use or consideration of prior counseling and corrective memoranda as a basis for subsequent disciplinary action. Thus, the Union's argument is misplaced and does not detract from our conclusion that the arbitration award violated the merit principle.

D. The Scope of Arbitrator's Relief Not Dispositive

As a remedy, the State was ordered to "cease and desist" from any further violation of article 16.7(G) of the MOU "by failing or refusing to purge materials of a negative nature that are more than a year old from any and all files maintained by the Employer upon request of the employee." Thus, the remedy would apparently extend not

---

[10] DWR included warnings that the state refers to as "standard *Bazemore* language" in the counseling and corrective memoranda issued to B.H., as follows: "Your conduct, as described in this memorandum, is unacceptable and will not be tolerated by the Department. If you engage in similar conduct in the future, the Department may take adverse action against you based on the incident(s) cited in this memorandum, as well as any future incidents."

only to DWR, but to other state departments with employees in bargaining unit 12. The state argues the remedy impermissibly went beyond the scope of the issues presented to the arbitrator. The Union responds that the remedy was permissible because the parties to the MOU were the State and the Union, not DWR, and the arbitration submittal allowed the arbitrator to decide on the appropriate remedy if a violation was found. We find it is unnecessary to address or resolve these arguments relating to the scope of the remedy declared by the arbitrator. Because we have decided the present appeal on the more fundamental ground that the arbitrator's interpretation of article 16.7(G) constituted a violation of public policy, we need not reach additional or peripheral questions relating to the scope of the remedy granted and we decline to do so.[11]

## DISPOSITION

We conclude the arbitration award interpreted and enforced article 16.7(G) of the MOU in a manner that constitutes a violation of the constitutional merit principle. Therefore, the award violated public policy and the trial court erred in denying the petition. The order and judgment of the trial court are accordingly reversed, and the matter is remanded to the trial court with instructions to enter a new order vacating the arbitration award. Costs on appeal are awarded to the State.

FRANSON, Acting P.J.

WE CONCUR:

MEEHAN, J.

DESANTOS, J.

---

[11] For similar reasons, it is unnecessary to reach the argument raised by the State that the arbitrator impermissibly added a new term to the provisions of the MOU.